Filed 9/24/20  In re R.T. CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re R.T. et al., Persons Coming Under the Juvenile Court Law. | B302738 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>T.V.,<br><br>Defendant and Appellant. | Los Angeles County Super. Ct. Nos. 18CCJP04314D–F |

APPEALS from orders of the Superior Court of Los Angeles County, D. Brett Bianco, Judge. Affirmed.

Paul A. Swiller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kristine P. Miles, Assistant County Counsel, Stephanie Jo Reagan, Deputy County Counsel, for Plaintiff and Respondent.

## INTRODUCTION

Mother Tatiana V. (mother) challenges the juvenile court's exercise of dependency jurisdiction over her three children. The Department of Children and Family Services (Department) received a referral from an aide at one of the children's school stating that the child, who is severely autistic, had injuries to her head and hand. Subsequent investigation revealed that mother had been using methamphetamine during the time period when the child sustained those injuries. The court found jurisdiction over the children under Welfare and Institutions Code section 300, subdivision (b).[1] Finding no error, we affirm.

## FACTS AND PROCEDRUAL BACKGROUND

### 1.    The Family and Prior Child Welfare Proceedings

Mother and father[2] have three children together, R.T. (born in 2004), M.T. (born in 2006), and Mariah (born in 2008.) The parents were married in 2005 and divorced in 2014. They currently live in separate residences.

All three children have been diagnosed with autism. Mariah is nonverbal and severely autistic. Mariah bites mother, hits herself and others, and has been exhibiting increasingly aggressive behaviors. M.T. and Mariah receive in-home services after school, every weekday, for three to four hours.

---

[1] All undesignated statutory references are to the Welfare and Institutions Code.

[2] Father is not involved in the appeal.

The family has had several interactions with the Department. From late 2010 to early 2012, the family participated in voluntary family maintenance services after the Department found a general neglect referral to be substantiated. The referring party alleged the parents were involved in an altercation in the home while the children were present. In 2011, the Department received two additional referrals. One related to Mariah, who was then three years old, after she unlocked the door and left the house without adult supervision. The other referral related to all three children and alleged two of the children had significant diaper rashes that had not been corrected, all three children wandered outside unsupervised, the family home did not have any home safety devices, and the home had an unsecured pool in the backyard. The Department concluded that both general neglect referrals were substantiated.

In July 2018, the Department filed a petition on behalf of the three children alleging a history of domestic violence with father as the aggressor. Although the parents had participated in voluntary family maintenance services, domestic violence continued to take place and the court found jurisdiction over the children under section 300, subdivision (c). The court terminated jurisdiction in February 2019 and issued exits orders giving the parents joint legal and physical custody of the children with primary residence with mother.

## 2. The Current Child Welfare Proceeding

The Department most recently became involved with this family in September 2019. On September 4, 2019, an aide at Mariah's school observed that Mariah had a black eye as well as scratches on three fingers and knuckles on one hand. The aide

did not believe mother's explanation for the injuries and contacted the Department.

During an unannounced home visit on September 5, 2019, a Department social worker interviewed mother, the children, and two behavioral therapists who were working with the children. Mother explained that on September 2, 2019, while mother was still in bed, Mariah put a blanket over her head and then hit her head (specifically, her left eyebrow area) on a wooden bed frame. Mother did not seek medical attention for Mariah. Later that day, the family was at the maternal grandmother's house. Mariah got her pinky finger stuck in a metal chair and mother was unable to free the finger. Members of the Los Angeles Fire Department were summoned to the home and they cut the chair in order to free Mariah's finger, scratching her fingers and knuckles in the process.

During the initial interview, mother denied currently using any drugs but reported that when she was a teenager, she used "PCP, Weed, Coke, Ecstasy, [and] LSD." She also reported that in 2012 she was hospitalized after she went to a party, "drank wine and did 'Meth'" and had "'a bad reaction.'" Mother agreed to take a drug test the following day, on September 6, 2019, but did not appear at the testing site, purportedly because her car would not start. Mother tested positive for amphetamine and methamphetamine on September 9, 2019. The social worker spoke with mother about the test results on September 17, 2019. Mother denied using methamphetamine and indicated the positive result must have been caused by Benadryl and Prozac.

On September 18, 2019, mother agreed to submit to another drug test but later called the social worker to explain that the test would be positive for methamphetamine. Mother

admitted that she smoked the drug three days prior and had used methamphetamine, purportedly for weight loss purposes, four to six times in the preceding month. Mother stated she did not use drugs at home and left the children in father's care when she used drugs. And although mother denied that her drug use hindered her ability to take care of the children, they were absent from school on September 19 and 20, because mother was reportedly "ill." She later said she thought she had a stomach flu or food poisoning and denied that drug use resulted in the children missing school.

On October 1, 2019, the Department detained the children from mother and placed them in father's home. A few days later, at the detention hearing, the court returned the children to mother's home over the Department's objection. The court concluded that placement with mother was in the children's best interest because father worked and did not have adequate childcare for them and the children would have difficulty adjusting to a foster care setting. The court required mother to drug test weekly, enroll in a drug treatment program, and ensure that the children attended school regularly.

Mother consistently tested for drugs and alcohol and her tests in October and early November were negative for all substances. Mother denied that she needed substance abuse classes, however. She also resisted enrolling in a drug treatment program, saying she was confident she could stop using drugs on her own.

The adjudication and disposition hearings took place on November 14, 2019. Mother testified at the adjudication hearing. On the basis of the Department's reports as well as mother's testimony, the court sustained the following amended allegation under section 300, subdivision (b):

"The [children's] mother … has a history of substance abuse including PCP, Cocaine, LSD, amphetamine, methamphetamine, ecstasy, marijuana and prescription medication and is a recent user of amphetamine [and] methamphetamine which renders the mother incapable of providing the children with regular care and supervision. On 09/09/2019 the mother had a positive toxicology screen for amphetamine and methamphetamine. On 09/09/2019 the mother was under the influence of amphetamine and methamphetamine while the children were in the mother's care and supervision. The mother's substance abuse endangers the children's physical health and safety, placing the children at risk of suffering serious physical harm, damage, danger and failure to protect."

As to disposition, the court concluded the children should remain in mother's home. Mother's case plan requires weekly drug testing and individual counseling to address case issues.

Mother timely appeals.

## DISCUSSION

Mother contends the court's jurisdiction findings are not supported by substantial evidence. We disagree.

### 1. Standard of Review

We review dependency jurisdiction findings for substantial evidence. (*In re D.C.* (2015) 243 Cal.App.4th 41, 55.) In doing so, we view the record in the light most favorable to the juvenile

court's determinations, drawing all reasonable inferences from the evidence to support the court's findings and orders. Issues of fact and credibility are the province of the court and we neither reweigh the evidence nor exercise our independent judgment. (*In re I.J.* (2013) 56 Cal.4th 766, 773 (*I.J.*).) But substantial evidence "is not synonymous with any evidence. [Citations.] A decision supported by a mere scintilla of evidence need not be affirmed on appeal. [Citation.] … 'The ultimate test is whether it is reasonable for a trier of fact to make the ruling in question in light of the whole record.' [Citation.]" (*In re Savannah M.* (2005) 131 Cal.App.4th 1387, 1393–1394, italics omitted; *In re Yolanda L.* (2017) 7 Cal.App.5th 987, 992.)

## 2. The court's jurisdiction findings are supported by substantial evidence.

To establish jurisdiction under section 300, subdivision (b),[3] on substance abuse grounds, the Department must prove: (1) "substance abuse by a parent … , (2) causation, and (3) serious physical harm to the child, or a substantial risk of such harm." (*In re Rebecca C.* (2014) 228 Cal.App.4th 720, 724–725 (*Rebecca C.*).) "The Department has the burden of proving by a

---

[3] The statute provides in relevant part: "A child who comes within any of the following descriptions is within the jurisdiction of the juvenile court which may adjudge that person to be a dependent child of the court: … [¶] The child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent … to adequately supervise or protect the child … or by the inability of the parent … to provide regular care for the child due to the parent's … substance abuse." (§ 300, subd. (b)(1).)

preponderance of the evidence that the children are dependents of the court under section 300. [Citations.]" (*I.J.*, *supra*, 56 Cal.4th at p. 773.)

Mother contends the Department failed to establish any of these three requirements. We address them in turn.

### 2.1. Substance Abuse

As a general matter, the legislature has declared, "The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2.) And our courts have repeatedly held that a juvenile court "need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child." (*In re R.V.* (2012) 208 Cal.App.4th 837, 843.)

Mother maintains that her recent use of methamphetamine does not qualify as substance abuse. Specifically, she cites *In re Natalie A.* (2015) 243 Cal.App.4th 178, and argues that she is not a "substance abuser" as we have defined that term. In *Natalie A.*, we referenced our prior opinion in *In re Drake M.* (2012) 211 Cal.App.4th 754 (*Drake M.*), in which we quoted the " 'full definition of "substance abuse" found in the [American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders (4th rev. ed. 2000) (DSM-IV-TR)][,] [which] describes the condition as "[a] maladaptive pattern of substance use leading to clinically significant impairment or distress, as manifested by one[4] (or more) of the following, occurring within a

---

[4] Mother argues incorrectly that the Department was required to establish all four of the indicators specified.

12-month period: [¶] (1) recurrent substance use resulting in a failure to fulfill major role obligations at work, school, or home (e.g., repeated absences or poor work performance related to substance use; substance-related absences, suspensions, or expulsions from school; neglect of children or household)[; ¶] (2) recurrent substance use in situations in which it is physically hazardous (e.g., driving an automobile or operating a machine when impaired by substance use)[; ¶] (3) recurrent substance-related legal problems (e.g., arrests for substance-related disorderly conduct)[; and ¶] (4) continued substance use despite having persistent or recurrent social or interpersonal problems caused or exacerbated by the effects of the substance (e.g., arguments with spouse about consequences of intoxication, physical fights)." ' " (*Natalie A.,* at p. 185.)

In arguing that she does not meet the definition of a substance abuser, however, mother presents the evidence in the light most favorable to her, thereby ignoring the applicable standard of review which requires that we view the evidence in the light most favorable to the court's decision. (See, e.g., *I.J.*, *supra*, 56 Cal.4th at p. 773 [" ' "[W]e draw all reasonable inferences from the evidence to support the findings and orders of the dependency court; we review the record in the light most favorable to the court's determinations; and we note that issues of fact and credibility are the province of the trial court" ' "].)

For example, mother asserts that her drug use was "short-term," and had permanently ceased by the time the Department filed the petition. To support this claim, mother highlights that she tested negative for drugs during the month between the detention hearing and the adjudication, she never used drugs at home or in the presence of the children, and she made

9

appropriate arrangements for the children's care while using drugs. Further, mother correctly notes that her family members as well as the professionals who provided in-home services to M.T. and Mariah universally praised her as a caring, patient, loving mother. The court undoubtedly took these facts into consideration at the detention hearing, when the court returned the children to mother's home, and at disposition, when the court continued that placement. But to the extent the court determined these facts, which are indeed favorable to mother, were outweighed by other factors, we will not substitute our judgment for the court's.

Mother's primary claim is that her use of methamphetamine in September 2019 was an isolated occurrence designed to help her lose weight and fit into a "cute dress" in time to celebrate her birthday in late September. The Department doubted mother's explanation, however, and was concerned that mother was using drugs in order to cope with the stress of caring for three high-need children with autism on her own. To the extent the court discredited mother's explanation for her recent drug use and gave greater weight to mother's long-standing (though apparently infrequent) use of drugs, it was free to do so.

In any event, when the evidence is viewed in the light most favorable to the judgment, mother meets at least one of the criteria we referenced in *Drake M.* During the period mother has admitted to using methamphetamine, Mariah suffered two physical injuries and all the children were absent from school for two days due to her reported "illness." In addition, mother continued to use drugs even after the Department intervened in the case—and even after a drug test came back positive for methamphetamine. Given that mother had worked with the

Department on several occasions, it is reasonable to assume that she was aware her children could be removed from her custody—yet she continued to use drugs and continued to deny that fact.

### 2.2. Causation

As already noted, under section 300, subdivision (b), state intervention is not warranted unless a parent has neglected his or her child due to one of the enumerated factors, such as drug use, or there is a substantial risk of harm in the future. Accordingly, we have held that a parent's use of marijuana or other drugs, standing alone, does not generally provide a sufficient basis for dependency jurisdiction. (See, e.g., *In re L.W.* (2019) 32 Cal.App.5th 840, 850 [risk of harm is not presumed when evidence demonstrates parental drug use]; *Rebecca C.*, *supra*, 228 Cal.App.4th at p. 728 [substance abuse without more is insufficient to support jurisdiction]; *Drake M., supra*, 211 Cal.App.4th at p. 769 [drug use without evidence that use has caused or will cause physical harm insufficient to support jurisdiction].)

Mother argues—again stating the evidence in the light most favorable to her—that the evidence does not establish a connection between her use of methamphetamine and any harm or risk of harm to the children. We disagree.

On this point, the court was concerned about two main aspects of the case: Mariah's injuries and the children's absences from school. During the time mother was admittedly using methamphetamine, Mariah suffered two different injuries. The court was likely concerned that mother, while impaired, was not able to render the attention and care required by her three high-need children—especially Mariah, who had a history of self-harming and aggressive behaviors. Further, the fact that during

the same period of time the children missed school due to mother's purported illness—and were presumably at home and in her custody—provides further evidence of a connection between her drug use and a risk of harm to the children.

### 2.3. Risk of Harm

Mother strenuously argues that the children have not suffered, nor are they at substantial risk of suffering, serious physical harm. Risk to a child from substance abuse can be established in two ways: (1) through proof of " 'an identified, specific hazard in the child's environment,' " or (2) through proof that the child is of " 'tender years' "—i.e., six years old or younger—in which case a "finding of substance abuse is prima facie evidence of the inability of a parent or guardian to provide regular care resulting in a substantial risk of physical harm." (*Drake M., supra*, 211 Cal.App.4th at pp. 766–767, italics removed; *In re Christopher R.* (2014) 225 Cal.App.4th 1210, 1219 [defining "tender years" as six years old or younger].) The children are older than six years. But the court was justifiably concerned that all three of these children have been diagnosed with autism and, at least in Mariah's case, exhibit behaviors that heighten the need for constant and close supervision and increase the risk of harm in the event their care is inadequate.

To show that a child faces a risk of harm at the time of the jurisdiction hearing, there " 'must be some reason beyond mere speculation to believe the alleged conduct will recur. [Citation.]' [Citation.]" (*In re D.L.* (2018) 22 Cal.App.5th 1142, 1146.) In determining whether conduct is likely to recur, courts may consider evidence of the parent's behavior in the past. (*In re N.M.* (2011) 197 Cal.App.4th 159, 165.) Here, mother used a variety of drugs in her teenage years, was hospitalized in 2012 as a result

12

of drug and alcohol abuse, and recently resumed using methamphetamine. As already discussed, the Department found mother's explanation for her recent drug use—a desire to lose weight—to be implausible. And both the court and the Department expressed concern that mother had an unresolved substance abuse issue that could continue to plague her if left untreated. These facts support the court's conclusion that the risk of serious physical harm was ongoing.

Additionally, a parent's denial of wrongdoing or failure to recognize the negative impact of her conduct is relevant to determining risk under section 300. (See *In re Tania S.* (1992) 5 Cal.App.4th 728, 735, fn. 4; see also *In re A.F.* (2016) 3 Cal.App.5th 283, 293 [" '[D]enial is a factor often relevant to determining whether persons are likely to modify their behavior in the future without court supervision' "].) The record in the present case indicates that mother initially denied using drugs. Even after her first drug test came back positive for amphetamine and methamphetamine, she claimed that her positive test results must have been due to her use of Prozac and/or Benadryl. And although mother eventually admitted she had been using methamphetamine, she refused to enroll in a drug treatment program, stating that she would be able to stop on her own. Mother also denied that her drug use impaired her parenting in any way, notwithstanding that the Department became involved after Mariah suffered two injuries. (See *A.F.,* at p. 293 [a parent's denial of responsibility is relevant in determining whether the parent's conduct is likely to recur in the future].)

Our conclusion does not diminish mother's admirable efforts in this case. We simply conclude that the court's exercise

13

of dependency jurisdiction in the first instance was not erroneous. Assuming mother's progress continues, we are confident that the dependency court will consider that fact in future proceedings.

## DISPOSITION

The adjudication orders are affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

LAVIN, J.

WE CONCUR:

EDMON, P. J.

EGERTON, J.